# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES GOAD, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-14-0282-HE |
| | ) |
| TOWN OF MEEKER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff James Goad filed this action against the Town of Meeker ("Town") and Samuel D. Byrd, Meeker's Chief of Police, asserting claims under § 1983 and state law. Defendants have filed a motion for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes defendants' motion should be granted.

### Background[1]

---

[1]*While plaintiff challenges many of defendants' factual statements on the basis they are immaterial or defendants have combined multiple facts into one numbered statement, most of the facts are undisputed.*

Defendant Sam Byrd currently is the Chief of Police for the Town of Meeker. He was promoted to Assistant Police Chief in November 2009 and Chief of Police in January 2013. Plaintiff lived in Meeker for ten years, from approximately 2004 until 2014.

On October 6, 2010, plaintiff's brother, Gerald Goad, was stopped by Officer Darren Harris of the Meeker Police Department for a traffic violation. Gerald Goad called plaintiff and told him that his car was going to be impounded. Plaintiff drove to the site of the traffic stop and Officer Harris, who felt plaintiff was interfering with the traffic stop, threatened multiple times to arrest plaintiff for obstruction if plaintiff did not return to his vehicle. Plaintiff was handcuffed at one point, but was released after a few minutes. Plaintiff filed a citizen's complaint against Office Harris with the Meeker Police Department as a result of the incident on October 7, 2010. The complaint, which was investigated by Jim Howard, the acting city manager, was resolved.

Plaintiff got into a dispute with another Meeker police officer, Officer Sean Sugrue, over a year later. On June 4, 2012, Officer Sugrue was seated in his patrol car in front of Meeker Supply and Pawn providing traffic control ("running traffic, stationary radar") near a construction zone on South Dawson, also known as Highway 18, in Meeker. Doc. #56-11, p. 10.[2] Officer Sugrue's patrol car was blocking the entrance to the pawn shop when plaintiff drove up. Plaintiff informed the officer he owned the pawn shop and, when he asked or told

---

[2]*Page references for briefs and exhibits are to the CM/ECF document and page number. For example, paragraph 3 of the declaration of defendant Bryd, attached to defendants' brief, is referred to as Doc. #56-1, p. 1, ¶3.*

Officer Sugrue to move it, the officer told plaintiff he was parked on an easement. Although the pawn shop was closed at the time, plaintiff told the officer he had a delivery coming. There was a brief argument during which Officer Sugrue said he would move his vehicle when he was ready to and plaintiff allegedly stated that he would take the matter up with the city manager. The officer did not leave his vehicle during the encounter. Plaintiff went into the pawnshop and the officer at some point drove away.

Later that day plaintiff went to the Meeker city hall for a previously scheduled meeting with the mayor and city manager to discuss town issues. He also intended to complain about his confrontation with Officer Sugrue. Officer Sugrue arrived at city hall at the same time as plaintiff. He had seen plaintiff heading there and thought he needed to be there to "face [his] accusers." Doc. #56-11, p. 94. Plaintiff and Office Sugrue got into another argument in the parking lot about whether plaintiff had worn a seatbelt while driving there. Plaintiff testified that when Officer Sugrue realized his '67 Camaro did not have a shoulder belt, he accused him of rolling through a stop sign. Plaintiff walked away from the argument and entered the building where he met the mayor and city manager. Plaintiff claims Officer Sugrue, who was coming in behind plaintiff, stated in a loud voice "He's got an attitude and I don't do attitude," at which point the city manager put his hand on plaintiff's shoulder and asked him to accompany him to his office. Doc. #56-8, p. 43. At some point (it is disputed whether it was before or after the incident with Office Sugrue) a sign was put up in front of Meeker Supply and Pawn that stated: "SLOW DOWN MEEKER SPEED

3

TRAP AHEAD."³ Plaintiff indicates he did not personally install the sign, but thought employees of Meeker Supply and Pawn probably put it up.⁴

On June 6, 2012, plaintiff filed a citizen's complaint against Officer Sugrue with the Meeker Police Department. Defendant Byrd, who at that time was the acting Assistant Chief of Police, investigated the complaint. He requested a written statement from Officer Sugrue and gave him a written warning for the incident.⁵ Defendant Byrd also sent plaintiff a letter regarding the results of his investigation. Before the June 4, 2012, incident with plaintiff, Officer Sugrue had never been given a warning or written up for misconduct by the Town of Meeker. He had not been the subject of a citizen's complaint. Officer Sugrue did not receive any further warnings or write ups or citizens' complaints until he was terminated by Chief of Police Byrd on February 11, 2014, for assaulting an arrestee.

While the Town of Meeker Police Department Training Manual/Standard Operating

---

*³Defendants claim plaintiff has created a sham issue in that he testified during his deposition that he could not recall when the sign was put up, but believed it went up after March, Doc. #56-8, pp. 18-19, and then stated in an affidavit submitted with his response brief that "[w]hile I do not remember the exact date the speed trap sign was posted in front of Meeker Supply and Pawn, I am sure that it was before Office Sugrue parked his patrol car in front of the driveway to the property and refused to move. Doc. #63-4. The court does not find the two statements sufficiently contradictory to warrant disregarding plaintiff's affidavit.*

*⁴Defendants did not challenge plaintiff's retaliation claim on the ground that he denied responsibility for placing the sign in front of the pawn shop. In other words, they did not address the issue of whether, if plaintiff did not put up the sign or apparently direct that it be put up, could it be considered his expression. Plaintiff did claim that defendants believed he was responsible for the sign.*

*⁵Byrd's memo to Sugrue "exonerated" him from any claimed violation of Department policies, but nonetheless warned him – what it termed a "verbal warning" – about his handling of contentious situations. Doc. #56-5.*

Procedures[6] authorizes the investigations of citizens' complaints, plaintiff asserts the procedures were not followed with respect to the two complaints he filed. The manual provides that "[c]omplaints involving how law-enforcement service is provided . . . will be investigated and handled by the Chief of Police,"[7] Doc. #56-7, p. 41, ¶6.7.3, but his complaints, plaintiff asserts, were investigated by the town administrator and the assistant chief of police.

Plaintiff's next contact with the Meeker Police Department occurred on February 16, 2013, when he was stopped for speeding by Officer Sugrue in Meeker. The officer told plaintiff he was going 45 mph in a 35 mph zone. It was dark at the time of the stop and plaintiff was driving a different vehicle than the one he drove when he had encountered Officer Sugrue in June 2012. Officer Sugrue did not know the identity of the person he was pulling over when he initiated the traffic stop. The stop did not last an unusual amount of time, the officer was not belligerent with plaintiff and did not attempt to intimidate him. Plaintiff did ask to see the radar and it showed that he was going 45 mph. Plaintiff claims he was not speeding because he "know[s] not to speed in Meeker, " Doc. #56-8, p. 61, though he testified he had his cruise set that morning and it was set to "[f]orty-five." *Id*. at 62. Plaintiff also asserted that he was not speeding because Officer Sugrue was sitting under the 35 mph speed limit sign, which was the sign that lowered the speed limit on that stretch

---

[6]*The Town of Meeker Board of Trustees voted on and approved the Standard Operating Procedures.*

[7]*They may be investigated by an outside agency if requested by the police chief.*

of road, and he was allowed to drive 45 mph until he got to the officer's patrol car and the 35 mph sign. Plaintiff did not file a citizen's complaint against Officer Sugrue in connection with the February 16th traffic stop and had no further contact with him.

Plaintiff hired an attorney to represent him in conjunction with the traffic ticket. On March 6, 2013, his attorney filed a motion requesting the production of the personnel records of Office Sugrue.

The fine for speeding one to ten mph over the speed limit in Meek is $119. Plaintiff eventually paid $119 in administrative fees in lieu of a fine on August 6, 2013, and the case was dismissed. Administrative fees are often assessed as a type of negotiated settlement for traffic offenses in Meeker municipal court. The Town, under the agreement, dismisses the offense so that it does not appear on the offender's driving record, and the offender pays the entire fine which is assessed as an administrative fee. The dismissal of the offense is not a determination of guilt or innocence.

On March 7, 2013, the day after plaintiff filed his motion seeking Sugrue's personnel file, defendant Byrd submitted a charge packet to the Lincoln County District Attorney's office, which included an application for warrant of arrest. The application listed three possible charges: operating a pawnshop after felony conviction, 59 Okla. Stat. §1503A(B); operating a pawnshop without a license, 59 Okla. Stat. §1512(C); and making a false declaration to law enforcement, 21 Okla. Stat. § 453.[8] Doc. #56-22, p. 38. The Lincoln

---

[8]*While defendant Byrd described the offense as making a false declaration to law enforcement, the title of the statute is "Preparing false evidence."*

County District Attorney's Office decided to charge plaintiff with one felony count under the latter statute. The other charges were determined to be administrative in nature and were submitted to the Attorney General's Office for review. A Lincoln County district court judge then found that probable cause existed to issue a warrant for plaintiff's arrest on the preparing false evidence charge under 21 Okla. Stat. § 453.[9]

Although defendant Byrd did not submit the charge packet until March 2013, he contends he began investigating plaintiff in June 2012. He asserts he became suspicious of plaintiff when he let slip, at the time he submitted his citizen's complaint against Officer Sugrue, that he had been in prison. Defendant Byrd states he reviewed plaintiff's citizen's complaint and noticed that plaintiff claimed to be the owner of Meeker Supply and Pawn. Defendant Byrd stated that because he was aware of state laws prohibiting convicted felons from owning or operating a pawnshop he ran a background check on plaintiff.[10] When he

---

[9]*The information in the application for warrant submitted by Byrd was not sufficient to support an inference that Goad's statement about owning the pawnshop was false. It only supported an inference that Goad's ownership would have violated other laws (i.e. a former felon operating the shop, or that he lacked a license), not that he did not in fact own it. The application makes no reference to what the Department of Consumer Credit's records showed or to any other indicator of the actual ownership of the pawn shop. However, for present purposes, where Byrd's potential liability is the issue, the question is not whether Byrd's written application was sufficient to support a finding of probable cause, but is rather whether Byrd had probable cause for the charge at all. As noted elsewhere, it is undisputed that Byrd contacted the Department of Consumer Credit and had the information about ownership which a department employee had relayed.*

[10]*Plaintiff challenges defendant Byrd's statement in his declaration that he was aware in the summer of 2012 that felons could not own or operate a pawn shop, citing Byrd's deposition testimony that it was a federal agent who later told him that plaintiff might be operating the pawn shop without a license or after a felony conviction. The court does not find the two statements to be inconsistent. Defendant Byrd testified that, as of July 5, 2012, he had completed the warrant application, except for inserting the statutes that were allegedly violated. The factual statement in the warrant included the following: "The facts based upon evidence is that James Waite Goad is a*

7

discovered plaintiff had several felony convictions, he looked into the ownership of Meeker Supply and Pawn to determine whether plaintiff was violating state law.[11] He contacted the Oklahoma Department of Consumer Credit, as it is the agency responsible for licensing and regulating pawnshops in Oklahoma. The person he spoke with informed defendant Byrd that Gerald Goad was the owner of Meeker Supply and Pawn and that plaintiff's name did not appear on any of the documents associated with the pawn shop. Doc. #56-1, pp. 4-5, ¶16. Defendant Byrd did not receive any documents from the consumer credit department. The license was issued to Meeker Supply and Pawn, LLC.

Defendant Byrd stated that, although he felt he had sufficient information to request that charges be filed against plaintiff, he did not immediately send a charge packet to the Lincoln County District Attorney's Office.[12] He testified that he instead contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in late summer or fall of

---

*convicted felon in the State of Oklahoma with a lengthy criminal record and is still on probation in Seminole County until 2016 according [to] public record . . . Under Oklahoma State Law, Goad is not allowed to do conduct business or otherwise have any dealings with a pawn shop." Doc. #56-22, p. 38.*

[11]*Individuals who have "a felony conviction which directly relates to the duties and responsibilities of the occupation of pawnbroker" are ineligible for a pawnshop license. 59 Okla. Stat. § 1503A. Plaintiff's prior felony convictions include knowingly concealing stolen property. Doc. #56-22, p. 36. Therefore, contrary to plaintiff's assertion in his brief, defendant Byrd did not make a false statement because "no such law exists," Doc. #63, p. 17, ¶37(B), when he declared that he was "aware of state laws that prohibited convicted felons from owning or operating a pawnshop." Doc. #56-1, p.4,¶14.*

[12]*Plaintiff asserts that "Chief Byrd had no evidence that Mr. Goad did not have an ownership interest in Meeker Supply and Pawn, LLC." Doc. #63, p. 18, ¶40. A statement from an employee of the Department of Consumer Credit is evidence. It is not documentary evidence, but it is evidence.*

8

2012 and asked it to investigate Meeker Supply and Pawn. He stated he was informed that undercover agents would be sent to the pawn shop to attempt to buy or sell firearms and that it would take a number of months for ATF to complete its investigation. Defendant Byrd said he put his investigation on hold and waited until he heard back from the Bureau.

Plaintiff disputes that defendant Byrd began investigating him in 2012, as he did not open an official case file on plaintiff until March 7, 2013. Plaintiff also points to the lack of any corroboration of defendant Byrd's conversations with ATF.[13]

In March 2013, defendant Byrd said he learned from ATF[14] that agents were not able to purchase or sell a firearm at the pawn shop and did not intend to pursue any federal charges at that time. Defendant Byrd indicates he then finalized the documents needed for the charge packet and submitted the request for criminal charges to the Lincoln County District Attorney's Office. One of those documents was an Application for Warrant of Arrest. Though it was notarized on March 7, 2013, it was dated at the top, July 5, 2012. Defendant Byrd explained the discrepancy was "[p]robably because I had prepared this some time ago waiting to hear what was going on in case ATF hadn't – if they couldn't get something going on within that several month period of time, I guess." Doc. #67-2, p. 5.

---

[13]*Defendants submitted additional evidence supporting the conversations, but not until their reply brief.*

[14]*There is a conflict between defendant Byrd's declaration and his deposition testimony as to whether he called ATF or someone from the Bureau called him, but the difference is not material. Compare Doc. #56-1, p. 5, ¶19 with Doc. #63-6, p. 6. Plaintiff also points out that in his deposition defendant Byrd stated he waited a few months and called ATF and in his declaration he stated that he heard back from ATF in approximately March. Id. Again, the distinction is not material for purposes of resolving the motion.*

He said he drafted the warrant application around July 12, 2012. *Id*.

Pam Hammers, an Assistant District Attorney for Lincoln County, decided to pursue criminal charges against plaintiff and filed an information on March 20, 2013, which charged plaintiff with preparing false evidence, a violation of 21 Okla. Stat. § 453. The charge was based on plaintiff's statement in his citizen's complaint that he owned Meeker Supply and Pawn when the documents submitted regarding the pawnshop to the Department of Consumer Credit indicated Gerald Goad was the owner.

When he learned a warrant had been issued for his arrest, plaintiff turned himself in at the Lincoln County Jail. After the criminal case was initiated, defendant Byrd did not have any contact with Ms. Hammers while the case was being prosecuted and no one from the Town of Meeker had any involvement in the case. The charge against plaintiff was dismissed without prejudice on August 7, 2013. Ms. Hammers testified that her decision to dismiss was not a comment on plaintiff's guilt or innocence. She also testified that no one from the town of Meeker pressured the Lincoln County District Attorney's office to file charges against plaintiff.

Analysis[15]

First Claim

In his first claim, plaintiff asserts four, or perhaps five, separate claims under § 1983

---

[15]*As almost an afterthought, defendant Byrd asserted at the end of his brief that he was entitled to qualified immunity. Neither party applied the typical qualified immunity analysis to plaintiff's claims. Defendant Byrd did not contend that any of the rights at issue were not clearly established, but rather claimed there had not been a constitutional violation.*

against both defendants. He alleges he was denied his right to free speech, to petition the government for a redress of grievances, and to have the assistance of counsel. He also alleges he was denied due process and was subjected to an unlawful search and seizure and a wrongful arrest. Plaintiff alleges a retaliation claim under § 1983 in his second claim and malicious prosecution and/or abuse of process under both federal and state law in his third claim. In his fourth and fifth claims he alleges false arrest and intentional infliction of emotional distress under state law. The last claim is asserted solely against defendant Byrd. Each claim will be addressed separately.

Initially, the court notes that plaintiff's response does not correlate to defendants' motion, leaving it to the court to try and determine which parts of defendants' motion plaintiff is responding to and which claims he has abandoned. Plaintiff does not address defendants' motion insofar as it seeks summary judgment on his claims based on asserted violations of his First Amendment rights to free speech and to petition the government for redress of grievances, or his claim that he was denied the assistance of counsel. He therefore confessed those claims, LCvR7.1(g), and summary judgment will be entered in defendants' favor on those claims. Plaintiff's due process claim, clarified in his response brief as being one for substantive due process, also fails. "As the Supreme Court explained in Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 , a constitutional challenge based on a claim that a prosecution lacked probable cause must be brought under the specific guarantees of the Fourth Amendment rather than the generalized guarantee of substantive due process." Pino v. Higgs, 75 F.3d 1461, 1469 (10th Cir. 1996); *see* Becker v. Kroll, 494 F.3d

11

904, 918 (10th Cir. 2007) ("We think the unavoidable construction of Albright is that no §1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment.").

The remaining claims asserted in plaintiff's first claim – search and seizure and wrongful arrest – relate to the charge that was filed against him in Lincoln County. They will be discussed in conjunction with his fourth claim for false arrest.

Second Claim – Retaliatory Prosecution

In his second claim, plaintiff contends defendants retaliated against him because he had engaged in several constitutionally protected activities. He asserts a sign was posted in front of his pawn shop about a speed trap the Meeker Police Department had set up in the area, he filed a citizen's complaint and he hired an attorney to represent him in his speeding ticket case. As a result of these acts, plaintiff asserts, "[d]efendants sought a frivolous and baseless arrest warrant that resulted in a felony charge being filed" against him.[16] Doc. #63, p. 32.

> To establish a § 1983 retaliation claim against non-immune officials, [plaintiff] must plead and prove (1) that [he was engaged in a constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [his] exercise of [his] First Amendment speech rights. [He] also must plead and prove the absence of probable cause for the prosecution.

---

[16]*To the extent plaintiff had asserted a separate First Amendment retaliation claim based on the speeding ticket in his complaint, in addition to a retaliatory prosecution claim, he abandoned it by failing to pursue it.*

Becker, 494 F.3d at 925 (internal citations omitted).

The presence or absence of probable cause is determinative here. There are aspects of plaintiff's evidence – such as the timing of Byrd's submission of the application relative to plaintiff's request for the personnel file – which would support an inference of retaliatory motive on Byrd's part. However, in evaluating the existence of probable cause in the context of a § 1983 claim, the court makes an independent and objective determination. Fogarty v. Gallegos, 523 F.3d 1147, 1156 (10th Cir. 2008). "[A]n officer's own subjective reason for the arrest is irrelevant . . . ." *Id.*; *see* Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Applying that standard, the court concludes plaintiff has not met his burden of demonstrating the absence of probable cause.

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Johnson v. Lindon City Corp., 405 F.3d 1065, 1068 (10th Cir. 2005) (internal quotation marks omitted). Defendant Byrd knew plaintiff stated in a sworn statement that he was the owner of Meeker Supply and Pawn. It is undisputed that he also had been told by the Oklahoma Department of Consumer Credit, the agency that licensed and regulated pawnshops in Oklahoma, that plaintiff's name did not appear on any of the documents associated with Meeker Supply and Pawn and that Gerald Goad, not plaintiff, was the owner

of the pawnshop.[17] The court concludes defendant Bryd could presume the information provided by the Department of Consumer Credit[18] was reliable and he therefore had reasonable grounds for believing plaintiff had violated 21 Okla. Stat § 453, by making a false sworn declaration in his citizen's complaint that he owned Meeker Supply and Pawn. He also had a reasonable basis for believing plaintiff had violated 59 Okla. Stat. §§1503A and 1512(C) by operating a pawnshop after a felony conviction and without a licence. In other words, the undisputed facts show probable cause to have existed for the arrest warrant and plaintiff's prosecution.[19] *See* Pino, 75 F.3d at 1469 ("'The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.'") (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)).

---

*[17]Plaintiff did not dispute either that defendant Byrd called the Department of Consumer Credit or that he was informed that Gerald Goad was the owner. See Doc. #56, p. 20, ¶ 39; Doc. #63, p. 17, ¶39. While plaintiff refers to defendant Byrd's deposition testimony that he was told "it was under Gerald Goad," his testimony is not in conflict with his statement in his declaration that he was told that Gerald Goad was the owner of Meeker Supply and Pawn.*

*[18]ADA Hammers indicated she also relied on information provided to her by the Department of Consumer Credit as the basis for her conclusion that plaintiff did not own Meeker Supply and Pawn, LLC and thus that probable cause existed for charging plaintiff with preparing false evidence. Doc. #56-22, pp. 11-14; 22-24. She endorsed Lindsey Lundy from the Department of Consumer Credit as a witness for the State of Oklahoma on the Information. Doc. #56-22, pp. 34-35.*

*[19]Plaintiff did not raise any other defense to the applicability of 21 Okla. Stat. § 453 other than that he did not make a false statement. He states in his response to defendants' factual statement that "the charge does not fit the actual criminal statute," but does not develop the argument in his brief. Doc. #63, p. 20, ¶43. While there may be some basis for questioning the applicability of the statute, the court will not attempt to resolve an argument that was not adequately briefed. See Rieck v. Jensen, 651 F.3d 1188, 1191 n.1 (10th Cir. 2011) ("But an argument is not preserved by merely alluding to it in a statement of facts.").*

Plaintiff challenges defendant Byrd's ability to rely merely on information he received over the telephone from the Department of Consumer Credit. He essentially contends defendant Bryd should have obtained documents from the Department and if he had, "he would have seen that DOCC does not request a copy of an operating agreement and does not require a limited liability company applicant to list *all* owners of the LLC." Doc. #63, p. 17. Plaintiff offers nothing, though, to support the assertion that an officer cannot rely on oral statements as a basis for determining probable cause. Further, the license application and state law do not support plaintiff's suggestion in any event. Under part C of the pawnbroker license application, which is "[t]o be completed only if applicant is a limited liability company" there are four lines. Under each is written "Full Name of Member." Doc. #56-24, p. 26. Meeker Supply and Pawn, LLC completed an Oklahoma Pawnshop License application and a renewal application. On both the only "member" listed is Gerald V. Goad.[20] Clearly the intent is that each member of the LLC is expected to sign or be identified in the application.[21] Section 1504(A) of Title 59, enacted prior to the passage of the Oklahoma Limited Liability Company Act, requires that:

> *Applications for a pawnshop license shall be under oath and shall state the full name and place of residence of the applicant. If the applicant is a partnership, the full name and place of residence of each member thereof shall be stated. If the applicant is a corporation, the full name and place of residence of each officer or major stockholder thereof shall be stated.*

---

[20]*Plaintiff's wife sent an email to the Department of Consumer Credit regarding the pawnshop's application, in which she stated that "[t]he Pawn Shop is a single member LLC . . . ." Doc. #56-8, p. 152.*

[21]*A "member' of a limited liability company "means a person with an ownership interest in a limited liability company . . . ." 18 Okla. Stat. § 2001(14).*

Regardless, the court concludes defendant Byrd was not obligated to request the pawnshop's licensing paperwork from the Department of Consumer Credit prior to making the probable cause determination. He could rely on the information provided by the agency in assessing whether plaintiff had provided false information in conjunction with his citizen's complaint.

As plaintiff has not demonstrated a factual dispute as to the circumstances showing probable cause for the charge of preparing false evidence filed against him, his claim of retaliatory prosecution fails. Summary judgment in defendants' favor will be entered on that claim.

Third Claim – Malicious Prosecution/Abuse of Process

Plaintiff's third claim is for malicious prosecution and/or abuse of process under both § 1983 and state law. The presence of probable cause forecloses plaintiff's malicious prosecution claim under § 1983, Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007), and state law. Parker v. City of Midwest City, 850 P.2d 1065, 1067 (Okla.1993). Summary judgment will be entered in defendants' favor on those claims and also on plaintiff's abuse of process claim, as it is in essence one for malicious prosecution. Plaintiff is alleging the malicious use of process, not the "improper use of process after it has been issued." Wolford v. Lasater, 78 F.3d 484, 490 (10th Cir. 1996) (internal quotation marks omitted).

Fourth Claim – False Arrest

In his fourth claim, plaintiff asserts a claim for false arrest under state law. He also

asserted a wrongful arrest claim under § 1983, as well as unlawful search and seizure claims. Plaintiff's false/wrongful arrest claims fail due to the court's conclusion that the undisputed facts show probable cause to have existed for his arrest. Plaintiff's search and seizure claims, which are based on the alleged baselessness of the charge filed against him in Lincoln County, fail as plaintiff was neither searched nor seized by anyone from the Meeker Police Department and the charge was supported by probable cause. Summary judgment will therefore be entered in defendants' favor on these claims.[22]

Fifth Claim – Intentional Infliction of Emotional Distress

Plaintiff did not respond to defendants' motion insofar as it sought summary judgment on plaintiff's claim for intentional infliction of emotional distress. He thereby confessed the claim, LCvR7.1(g), and summary judgment as to it will be entered in defendant Byrd's favor.

Conclusion

If the disposition of the present motion turned on Chief Byrd's motivation for pursuing criminal charges against Mr. Goad, summary disposition of plaintiff's claims would not be appropriate. It is possible that a jury might accept Chief Byrd's explanation for the handling and timing of the charges – that he always intended to pursue potential violations in some way and was waiting on ATF to conclude its investigation of Mr. Goad before deciding what to do. It is also possible that a jury might conclude – based on the nature of the charges, the timing of their pursuit, and Mr. Goad's history with the police department

---

[22]*In light of the probable cause determination and plaintiff's abandonment of several of his constitutional claims, it is unnecessary to resolve the issues raised as to potential municipal liability.*

17

– that Chief Byrd sought criminal charges based on some retaliatory motive. However, as discussed above, the claims at issue here turn on the presence or absence of probable cause, which is an objective determination based on what Chief Byrd knew, rather than on what his subjective motivations were.

Accordingly, defendants' motion [Doc. #55] is **GRANTED** and summary judgment is **GRANTED** in favor of defendants and against plaintiff as to all claims

**IT IS SO ORDERED**.

Dated this 24th day of April, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE